# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MS. MARY GIDDINGS WENSKE, INDIVIDUALLY AND AS TRUSTEE OF THE THOMAS HUNTER GIDDINGS, JR. TRUST U/W/O THOMAS H. GIDDINGS DATED 5/23/2000, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **C.A. No. 2017-0699-JRS** |
| BLUE BELL CREAMERIES, INC., BLUE BELL CREAMERIES, U.S.A., INC., PAUL W. KRUSE, JIM E. KRUSE, HOWARD W. KRUSE, GREG BRIDGES, RICHARD DICKSON, WILLIAM J. RANKIN, DIANA MARKWARDT, JOHN W. BARNHILL, JR., PAUL A. EHLERT, DOROTHY MCLEOD MACINERNEY, PATRICIA RYAN, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| BLUE BELL CREAMERIES, L.P., | ) ) | |
| Nominal Defendant. | ) | |

## ORDER GRANTING APPLICATION TO CERTIFY INTERLOCUTORY APPEAL

WHEREAS, the newly-created Special Litigation Committee (the "Committee") of Nominal Defendant Blue Bell Creameries, L.P. ("Blue Bell") intervened in this action for the limited purpose of moving to stay the litigation

pending the results of its investigation of the derivative claims asserted here (D.I. 102, 103);

WHEREAS, Plaintiffs opposed the Committee's Motion to Stay (D.I. 128);

WHEREAS, by Opinion dated August 30, 2019 (D.I. 150), the Court denied the Committee's Motion to Stay upon concluding the Committee had not been properly formed, as a matter of the law, because the Court had already determined that the sole appointing authority, Blue Bell's general partner, Blue Bell Creameries, Inc. ("BBGP"), was unfit to consider a demand to pursue the derivative claims (the "Opinion")[1];

WHEREAS, on September 9, 2019, the Committee timely filed an application for certification of an interlocutory appeal of the Opinion (the "Application") (D.I. 151);

WHEREAS, the Application asserts three grounds for interlocutory appeal under Supreme Court Rule 42: (1) "The question of whether a sole general partner of a limited partnership (deemed to have a disabling conflict of interest for purposes of demand futility) is stripped of the *power and authority* to act through a special committee of its board of directors comprised of disinterested and independent directors to utilize the process created by *Zapata* is an important question of

---

[1] *Wenske v. Blue Bell Creameries, Inc.*, 2019 WL 4051007 (Del. Ch. Aug. 28, 2019).

Delaware law that the Supreme Court promptly should resolve"—presumably relying upon Supreme Court Rule 42(b)(iii)(A) and perhaps, although unclear, Rule 42(b)(iii)(B)[2]; (2) the question of law decided by the Opinion "relates to the construction or application of a statute of this State"—6 *Del. C.* § 17-403(c)—that should be settled by the Supreme Court promptly—presumably relying upon Supreme Court Rule 42(b)(iii)(C)[3]; and (3) "the review of the interlocutory order may terminate the litigation" if the Supreme Court were to reverse the Opinion and hold that the Committee was properly formed, and if the Committee were then to determine that the claims asserted in this litigation should not be prosecuted—presumably relying upon Supreme Court Rule 42(b)(iii)(G)[4];

WHEREAS, on September 18, 2019, Plaintiffs opposed the Application (the "Opposition") (D.I. 157); and

WHEREAS, the Court has carefully considered the Application, the Opposition and the criteria set forth in Supreme Court Rule 42,

---

[2] Application ¶ 8.   I say "presumably" because the Committee did not tie its arguments to the specific provisions of Supreme Court Rule 42 to which the argument(s) relate.

[3] Application ¶ 7.

[4] *Id.*

**IT IS HEREBY ORDERED**, this ___25th___ day of September, 2019, that:

1.      Supreme Court Rule 42(b)(i) provides, "[n]o interlocutory appeal will be certified by the trial court or accepted by this Court unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[5]   Rule 42(b)(ii) provides that instances where the trial court certifies an interlocutory appeal "should be exceptional, not routine, because [interlocutory appeals] disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[6]   For this reason, "parties should only ask for the right to seek interlocutory review if they believe in good faith that there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[7]

2.      When certifying an interlocutory appeal, "the trial court should identify whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice.   If the balance is uncertain, the trial court should refuse to certify the interlocutory appeal."[8]

---

[5]  Supr. Ct. R. 42(b)(i).

[6]  Supr. Ct. R. 42(b)(ii).

[7]  *Id.*

[8]  Supr. Ct. R. 42(b)(iii).

3. After careful review, I am satisfied the Opinion "decide[d] a substantial issue of material importance that merits appellate review before a final judgment,"[9] that "the likely benefits of interlocutory review outweigh the probable costs,"[10] and that "[t]he interlocutory order involves a question of law resolved for the first time in this State."[11]

4. *First*, the Opinion decided a substantial issue in that it decided an issue that "relate[s] to the merits of the case," albeit somewhat remotely.[12] Specifically, the Opinion determined that BBGP, as Blue Bell's sole general partner, had to be free from conflict before it could delegate its management of the litigation asset to a special litigation committee. Because the Court already has determined BBGP could not have objectively considered a limited partner's demand that it pursue the derivative claims at issue here, it follows that BBGP, as an entity, cannot delegate the authority to determine whether to prosecute the derivative claims to a committee of its board of directors or to agents appointed by any such committee.[13] This

---

[9] Supr. Ct. R.42(b)(i).

[10] Supr. Ct. R. 42(b)(iii).

[11] Supr. Ct. R. 42(b)(iii)(A).

[12] *Castaldo v. Pittsburgh-Des Moines Steel Co., Inc.*, 301 A.2d 87, 87 (Del. 1973) ("Generally speaking, the substantive element of the appealability of an interlocutory order must relate to the merits of the case . . . .").

[13] *Wenske*, 2019 WL 4051007, at *4, *6.

5

determination restricted, if not eliminated, an important aspect of BBGP's right to manage Blue Bell.[14] And, while I acknowledge Plaintiffs' argument that the Opinion addressed a motion to stay, and therefore does not relate directly to "the merits of the case," the practical effect of the Opinion is that the Committee will have no say in the management of the litigation asset. This, in turn, means the Committee will have no right or ability to terminate the litigation if that is the outcome it would have deemed justified after it completed its investigation. Thus, while the Opinion did not adjudicate the merits of the case, it did "relate to the merits."[15]

5. *Second,* the Opinion "involved a question of law resolved for the first time in this State"[16]—that is, the authority (or not) of a lone, conflicted general partner to delegate its management of a litigation asset to a special litigation committee. While the matter is settled in the corporate context, where the outcome

---

[14] *See generally* 6 *Del. C.* § 17-403 ("Except as provided in this chapter or in the partnership agreement, a general partner of a limited partnership has the rights and powers and is subject to the restrictions of a partner in a partnership that is governed by the Delaware Uniform Partnership Law in effect on July 11, 1999 (6 Del. C. § 1501 et seq.)").

[15] *Castaldo*, 301 A.2d at 87.

[16] Supr. Ct. R. 42(b)(iii)(A).

here would have been different,[17] the question has not been decided in the limited partnership/alternative entity context.[18]

6.      *Third,* while the Opinion did not directly construe a statute, the Committee is correct that the Opinion did implicate a Delaware statute—6 *Del. C.* § 17-403(c)—to the extent that the Opinion could be interpreted, in a stretched reading, to limit the general partner's statutory right to delegate management authority to "1 or more persons," including to "agents, officers or employees of the general partner. . . ."     In this sense, it is possible the Application satisfies Rule 42(b)(iii)(C).[19]

7.      *Fourth*, interlocutory review may terminate the litigation. As previously noted, if the Supreme Court reverses the Opinion, then the Committee will be permitted to conduct its investigation and may determine that the litigation

---

[17]  Specifically, as acknowledged in the Opinion, the seminal *Zapata* decision makes clear that conflicted members of a corporate board of directors may delegate the management of a litigation asset to a special litigation committee of the board comprised of disinterested, independent board members.   In the limited partnership context, however, conflict is assessed at the entity level, not by counting heads among the individuals comprising the governing body of the general partner.   Accordingly, since the authority of the special litigation committee flows from the general partner that appointed it, that general partner, as an entity, must be free from conflict in order for the committee to be a duly authorized decision maker for the limited partnership.   *Wenske*, 2019 WL 4051007, at *3 (citing to *Zapata Corp. v. Maldonado*, 430 A.2d 779, 786 (Del. 1981)).

[18]  *Id.* at *6 (observing that, in the corporate context, BBGP's actions "likely would be effective.").

[19]  Supr. Ct. R. 42(b)(iii)(C).

should be dismissed. If this Court were to conclude the Committee was well functioning, and that its recommendation otherwise complies with Delaware law, then the action would be dismissed.[20] On the other hand, if appellate review is not available now, then the Committee will never have the right to manage the litigation asset or, at least, not in real time. While I am satisfied the Committee has no such right under the circumstances presented here, I am also satisfied it should have the opportunity to make its contrary arguments to the Supreme Court before Plaintiffs' derivative claims are finally adjudicated on the merits.

8. For the foregoing reasons, the Application is **GRANTED**.

/s/ *Joseph R. Slights III*
Vice Chancellor

---

[20] *Kaplan v. Wyatt*, 484 A.2d 501, 519–20 (Del. Ch. 1984) (granting a motion to dismiss after finding that a special litigation committee's motion was made in "good faith" after a "reasonable and thorough investigation.").

8